IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TONI L. FEIBUSCH, | ) | Civ. No. 07-00244 BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER AFFIRMING DECISION |
| vs. | ) | OF COMMISSIONER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER AFFIRMING DECISION OF COMMISSIONER

Plaintiff Toni Feibusch ("Feibusch") has filed an action in this Court appealing a decision of Defendant Michael J. Astrue, the Commissioner of Social Security ("the Commissioner"), who denied Feibusch Disability Insurance Benefits after a hearing before an Administrative Law Judge ("ALJ"). The Court deems it appropriate to decide this matter without further hearing, based on the submissions of the parties. After careful consideration of the parties' briefs, as well as the entire record in this case, the decision of the Commissioner is hereby AFFIRMED.

## BACKGROUND

Feibusch is 49 years old, and married with two children. She first injured her right shoulder in October 1998, while painting her bathroom. Over the next seven years, she underwent a total of three surgeries on the shoulder, and was examined, diagnosed, and treated by a variety of doctors and surgeons. In 2003, she filed an application for Disability Insurance Benefits, claiming that she was permanently disabled. A hearing was held before the ALJ on November 19, 2005. The ALJ determined that Feibusch was not permanently disabled, and that she had the residual functional capacity to perform the job of ticket taker, which existed in substantial numbers in the national economy. Feibusch requested review of the ALJ's decision by the Social Security Appeals Council, which was denied. She has now requested review by this Court, and consented to have her case heard by a Magistrate Judge.

## STANDARD OF REVIEW

The decision of the Commissioner must be affirmed if it is supported by substantial evidence and the Commissioner applied the correct legal standards. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). To determine

whether there is substantial evidence to support the ALJ's decision, the court should review the administrative record as a whole, weighing both the evidence that supports and evidence that detracts from the ALJ's conclusion. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Where evidence is susceptible to more than one rational interpretation," the conclusion of the ALJ must be upheld. Burch, 400 F.3d at 679.

## DISCUSSION

I.  FEIBUSCH'S RESIDUAL FUNCTIONAL CAPACITY

The ALJ ultimately found that Feibusch was not disabled, and had sufficient residual functional capacity "to perform a range of light work." (R. 27). This finding was predicated in part on the ALJ's finding that Feibusch's "allegations regarding her limitation [were] generally credible but disproportionate when she alleges a complete inability to perform substantial gainful activity." (R. 27.) Specifically, the ALJ determined that Feibusch was able to perform substantial gainful activity, but "with restrictions limiting climbing, balancing, stooping, kneeling, crouching, and crawling to only occasional basis, and precluding the use of ladders, ropes, and scaffolds" and that additionally, Feibusch "has no use of her dominant right upper extremity." (R. 27.) Feibusch does not disagree with the limitations placed on her by the ALJ, but argues that the ALJ

erred in partially discrediting her statements about the level of pain she experiences in relation to her injured shoulder, and the disabling effects of that pain.

In determining whether a person is disabled, the ALJ must consider an individual's statements regarding the persistence and severity of pain, and the extent to which it limits the individual's ability to perform basic work activities. Soc. Sec. Ruling 96-7p. The ALJ must assess the credibility of these statements based on "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." Soc. Sec. Ruling 96-7p, at *1. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). While an individual's statements about pain "may not be disregarded solely because they are not substantiated by objective medical evidence," Soc. Sec. Ruling 96-7p, at *1, at the same time, "an individual's statement(s) about his or her own symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled Soc.

Sec. Ruling 96-7p, at *2.

Here, Feibusch contends that the she is unable to perform even light work because of the high level of pain she experiences.  She contends that the ALJ "improperly equated Feibusch's ability to sporadically perform daily activities such as vacuuming twice a week, cooking dinner, limited driving, shopping, a little gardening, carrying her purse and making the bed with her ability to work." (Mem. Supp. Mot. 19.)  Feibusch argues that despite her ability to perform these occasional activities, she is unable to perform regular work because of the pain she experiences.  She makes this argument notwithstanding the limitations imposed by the ALJ, including the limitation of not using her right arm.  Feibusch contends that even if she does not have to use her right arm for work-related activites, she would still have to use it for "basic activities," which would then in turn "trigger severe pain that would prevent her from working without taking breaks and icing her arm." (Reply Mem. 13.)  She claims that the ALJ improperly failed to fully credit her allegations of pain, and argues that she is completely disabled.

The Court disagrees, and finds that the ALJ followed the regulations, case law, and Social Security Rulings in assessing Feibusch's credibility.  Specifically, the ALJ properly examined the relevant medical opinion testimony, Feibusch's own statements about nature of her pain, and other available

information regarding the extent to which Feibusch might or might not be disabled. These sources provide substantial evidence for the ALJ's implicit finding that Feibusch's right shoulder pain stems only from the active use of her right arm, and that when the right arm is not actively used, Feibusch does not experience a disabling level of pain.

First, the majority of the medical opinions before the ALJ suggest that Feibusch's pain is directly related to use of her right arm, and that she can perform a range of light work, as long as that work did not involve her right arm. The ALJ accorded "significant weight" to the opinion of Dr. Ting, Feibusch's treating orthopedic surgeon during most of the relevant time period. (R.24.) Dr. Ting wrote that that Feibusch's right shoulder pain would be "relieved only by positional rest and modalities" and that her injury "will continue to progress and be aggravated if she were put in an environment that requires any use of her right upper extremity . . . ." (R. 849-850.) Dr. Ting's opinions indicate that it is the "use" of her right arm that causes her pain, and if she is put in an environment that requires the use of her arm, then she will not suffer pain from the right shoulder.

Similarly, Dr. Salzberg, whose opinion was also considered by the ALJ (see R.24) in determining the extent of Feibusch's pain, stated that although Feibusch was capable of lifting and carrying 10 pounds with her right arm, doing

so "will undoubtedly increase her pain levels" (R. 974). If it was Dr. Salzberg's opinion that using her right arm would cause Feibusch pain, then it must necessarily follow that if Feibusch did not use her right arm, then she would not be in substantial pain.

Dr. Borgia, whose opinion was given "limited weight" by the ALJ (R. 24), found that Feibusch had "slight moderate pain, occasionally progressing to moderate severe." (R. 825.) While Dr. Borgia does not state the connection explicitly, he implies that this pain is linked "to the repetitive use of the upper extremities." (R. 825). There is no indication from Dr. Borgia that Feibusch's shoulder injury causes her disabling pain when the arm is not being actively used.

Dr. Newman did not examine Feibusch, but he reviewed her records, and reported that Feibusch's pain was triggered "with activities such as chopping or grating cheese" (R. 777), that is, activities which involve the use of her right arm. The ALJ stated, however, that Dr. Newman's opinion was given "less weight" by the ALJ, since Dr. Newman "did not fully consider the claimant's pain level. (R. 24.)

These medical opinions indicating that Feibusch's pain is tied to the active use of her right arm are further supported by Feibsuch's own statements during the hearing before the ALJ. When she was asked "what specifically about the work environment do you think would give you difficulty," she responded "shoulder *movement*" (1091 ((emphasis added)). She further explained, "as I move my shoulder with any activity, the, the pain increases so then have to have long rest periods," and that her level of pain was increased by "anything that, that uses, involves shoulder movement . . . ." (1092). These statements, like the medical opinions of most of Feibusch's examining physicians, show a correlation between Feibusch's use of her arm and the pain she feels.

Finally, the ALJ considered evidence before him of the everyday activities that Feibush performs, such as vacuuming twice a week, cooking dinner, driving, household chores, shopping, gardening, and walking two to three miles per day. (R. 25) Feibusch argues that the ALJ "improperly equated Feibusch's ability to sporadically perform daily activities . . . with her ability to work." (Pl.'s Opening Brief. 19.) While the ALJ certainly looked at evidence of Feibusch's everyday activities, the Court disagrees with Feibusch's contention that the ALJ used her ability to carry out these activities as a simple proxy for her ability to perform substantially gainful activity. Rather, it appears that the ALJ took

Feibusch's ability to perform daily activities into account as one of several factors in determining that Feibusch's level of pain was not disabling as long as she was not required to actively use her arm or shoulder.

In contrast with the substantial evidence supporting the ALJ's finding, there is very little evidence in the record supporting Feibusch's argument that her pain, even when she is not using her arm, is so severe and pervasive that she is unable to perform any substantially gainful activity. Only one of Feibusch's many examining physicians provided a statement that can be read as supporting her position on the matter. This was Dr. Soma, who, after examining Feibusch in 2005, reported that she "has persistent R[ight] shoulder pain with rest or activity, that worsens throughout each day and does not improve over time . . . ." (R. 1040.) Dr. Soma's statement does indicate that the pain Feibusch experiences is independent of her use of the arm. Dr. Soma's statement, however, is the only evidence in the record which supports Feibusch's allegations. Accordingly, the Court finds that the ALJ did not err in assessing Feibusch's credibility regarding the effects of her pain, and that substantial evidence supports the ALJ's finding that Feibusch's pain is not disabling as long as she is not using her right arm.

## II. JOB AS A TICKET TAKER

### A. <u>Alleged Conflict Between Vocational Expert's Testimony and Job Description in Dictionary of Occupational Titles</u>

Feibusch argues that even if the ALJ did not err in finding her able to perform a range of light work, he erred in determining that Feibusch is capable of performing work as a ticket taker because of the "real and potential conflicts" between the ticket taker job as defined in the Dictionary of Occupational Titles ("DOT"), and the ticket taker job identified by the Vocational Expert ("VE"). (Pl.'s Opening Brief 21.)  If the information in the DOT is inconsistent with the testimony of the VE, then the ALJ must resolve the conflict before relying on the VE's testimony.  <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1153-54 (9th Cir. 2007).

Here, the VE testified that a person of Feibusch's limitations could perform the job of ticket taker. The DOT, in job description 344.667-010, describes ticket taker as follows:

> Collects admission tickets and passes from patrons at entertainment events: Examines ticket or pass to verify authenticity, using criteria such as color and date issued.  Refuses admittance to patrons without ticket or pass, or who are undesirable for reasons, such as intoxication or improper attire.  May direct patrons to their seats.  May distribute door checks to patrons temporarily leaving establishment.  May issue and collect completed release forms for haxardous events, and photograph patron with release form for permanent records file.  May

>   be designated Gate Attendant (amuse. & rec.) or Turnstile Attendant (amuse. & rec.) when collecting tickets at open-air event.

DOT 344.667-010.

These requirements are more fully specified in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"). Because ticket taker is classed as "Light" work by the SCO, the job occasionally involves exerting up to 20 pounds of force, and frequently requires exerting up to 10 pounds of force. In addition, the SCO states that the job of ticket taker requires frequent reaching, frequent handling, and occasional fingering. Reaching requires "[e]xtending hand(s) and arm(s) in any direction." SCO, App. C. Handling involves "[s]eizing, holding, grasping, turning, or otherwise working with hand or hands." SCO, App. C. Fingering involves "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole arm as in handling." SCO, App. C.

Feibusch argues that the ticket taker job, as described in the DOT and SCO, conflicts with the testimony of the VE. She contends that the VE stated that the ticket taker job could be performed by a person with use of just one arm, while the DOT and SCO describe it as requiring the use of requires the use of both arms. Since neither the DOT nor the SCO explicitly state that the use of both arms is required, Feibusch must argue that such a requirement is implied by the frequent

reaching and handling the job entails, since reaching involves "hand(s) and arm(s)," and handling involves the use of one's "hand or hands." (Reply Mem. 9.) Feibusch seems to believe that the use of the plural indicates that both hands are required.[1]

The Court disagrees, however. The use of the parentheses around the letter "s" in the description of reaching, and the use of the word "or" in the description of handling, indicate that one may reach and handle with one arm, or one may reach and handle with both arms, but that the use of two arms is not necessarily required for jobs that require reaching and handling. Other courts have reached similar conclusions. See Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000) (finding that a person with the use of one arm could perform the jobs of cashier and ticket taker, even though these jobs both required fingering and handling abilities); Diehl v. Barnhart, 357 F. Supp. 2d 804, 822 (E.D. Pa. 2005) (finding that because a person with limited use of one arm could perform jobs requiring frequent reaching, handling, and fingering, there was no conflict between the VE's testimony and the DOT). Accordingly, the Court finds that

---

[1] Feibusch also makes the unsupported argument that a person cannot ever perform work involving "fingering" with only the non-dominant hand. She provides no support for this argument, however, and the case law is to the contrary.

there was no conflict between the VE's testimony and the DOT and SCO descriptions of the job of ticket taker.

  B. <u>Vocational Report of Eileen Figueroa</u>

    Feibusch also argues that "Defendant completely ignored the vocational report of Eileen Figueroa, a licensed vocational rehabilitation counselor, which was submitted to the Appeals council after the ALJ's decision." (Pl.'s Opening Brief 11.) Defendants argue that "Ms. Figueroa's report must be taken into consideration by this court, and Defendant has made no arguments against Ms. Figueroa's findings." (Pl.'s Opening Brief 11.)

    Feibusch is somewhat mistaken, as the Appeals Council stated that it did consider the additional evidence submitted by her, including Ms. Figueroa's vocational report. (R. 9.) Feibusch is correct, however, that this Court must take into account Ms. Figueroa's findings as part of the evidence before it. <u>See</u> <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1452 (9th Cir. 1993). Ms. Figueroa concludes, contrary to the testimony of the VE, that "the job of Ticket Taker precludes a one-armed individual from performing its job duties, requires physical activities beyond the determined residual capacity, and greatly falls short in meeting Ms. Feibusch's age, education, and past relevant work experience." (R. 1063.)

For the reasons discussed above, the Court disagrees with Ms. Figueroa that as a matter of law, a person with one arm cannot perform the job of ticket taker. The descriptions in the DOT and SCO fail to specify that both arms are required, and the language describing "reaching" and "handling" leaves open the possibility that these tasks may be done with only one arm.

The Court also finds that substantial evidence exists that Feibusch can perform the job of ticket taker, even taking into account Ms. Figueroa's findings to the contrary.[2] The VE specifically stated that Feibusch could perform the job of ticket taker, and the job descriptions in the DOT and SCO do not appear to preclude someone with Feibusch's residual functional capacity and ALJ-assigned limitations from working as a ticket taker. Even taking into account Ms. Figueroa's testimony to the contrary, substantial evidence still exists supporting the Commissioner's determination that Feibusch could work as a ticket taker.[3]

---

[2]The Court has already affirmed the Commissioner's residual functional capacity finding; here, the Court examines only whether there is substantial evidence supporting the Commisioner's determination that Feibusch can perform the job of ticket taker given her residual functional capacity.

[3]Ms. Figueroa bases her findings on Feibusch's ability to perform the ticket taker job largely on assumptions she makes about information found on America's Career Infonet, available at http://www.careerinfonet.org/ The Court viewed the page Ms. Figureroa refers to, namely, the "Occupational Profile" for the occupation of "Ushers, Lobby Attendants, and Ticket Takers" in the State of Hawaii. The Court found no information supporting Ms. Figueroa's assumptions that the listed work activities and tasks for this occupation would require the prohibited functions listed by Ms. Figueroa. For example, Ms. Figueroa assumes that the listed task of "Work with others to change advertising displays" will "require[] reaching all levels, may require climbing ladders or step stools" (R. 1061). This assumption that reaching and ladders

Ms. Figueroa also insinuates that Feibusch is unable to do the job of ticket taker becuase of her "age, education, and past relevant work experience." (R. 1063.) Feibusch has not yet turned 50 years old, however, and for claimants under age 50, "age is not considered to seriously affect their ability to adapt to a new job," Kerns v. Apfel, 160 F.3d 464, 466 (8th Cir. 1998). With respect to her education and past relevant work experience, Feibusch fails to present any legal authority indicating that the Commissioner must base its decision only on the existence of jobs that afford petitioners the same level of past work which they previously enjoyed. Accordingly, Ms. Figueroa's report provides no grounds on which this Court may overturn the decision of the Commissioner.

C. Number of Jobs Available

Finally, Feibusch argues that regardless of any unresolved conflict, "there are an insufficient number of ticket taker jobs available in the regional economy to satisfy the Step Five requirement that a substantial number of jobs exist which Feibusch could perform." (Pl.'s Opening Brief 25.) In order to find that an individual is not disabled, the ALJ must determine that a "significant" number of jobs exist for that person "in the national economy," which is defined as

---

will be required to change advertising displays does not appear to be supported by any information found on the website, however. These bare assumptions, without more, are insufficient to create any genuine conflict between Ms. Figueroa's findings and the DOT and SCO descriptions.

"either the region where [the claimant] live[s] or in several regions in the country." 20 C.F.R. § 404.1560(c).  Whether the number of jobs that exist in the national economy is "significant" is a question of fact for the ALJ.  <u>Martinez v. Heckler</u>, 807 F.2d 771, 775 (9th Cir. 1986).

Here, the VE testified that 890 ticket taker jobs exist in the regional economy.  Feibusch disagrees with this number only slightly, arguing that as of 2002, there were 870 such jobs in the regional economy, and that by 2012, there will be only 840 such jobs in the regional economy.  Feibusch argues however, that 890 jobs is not "significant," particularly given the fact that Feibusch lives on island of Maui and does not have easy access to many of the jobs in the overall "region" of Hawaii, which are presumably spread over all the islands.

The Court finds that the ALJ did not err in determining that a significant number of ticket taker jobs exist in the national economy.  Even assuming that only 840 such jobs are available, or will be available, in Hawaii, this constitutes a significant number of jobs.  <u>See</u> <u>Jenkins v. Bowen</u>, 861 F.2d 1083, 1087 (8th Cir. 1988) (finding that 500 regional jobs was a significant number); <u>Trimiar v. Sullivan</u>, 966 F.2d 1326, 1330-32 (10th Cir. 1992) (upholding finding that 850 to 950 regional jobs was a significant number).  Feibusch provides no case law to the contrary.  In addition, the Court finds that based on the language of the

Social Security Regulations and the underlying statute, the ALJ properly based his decision on the number of jobs in the entire regional economy of Hawaii, and not on the number of jobs in Feibusch's local area of Maui.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is hereby AFFIRMED, and Plaintiff's Suit is DISMISSED.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: March 4, 2008

Feibusch v. Astrue; ORDER AFFIRMING DECISION OF COMMISSIONER; Civ. No. 07-00244 SOM-BMK.